**Sukhjinder SINGH, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

No. 06–70838.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 5, 2007.

Filed March 10, 2008.

Reinhardt, Circuit Judge, filed dissenting opinion.

Judith Lott, Newark, CA, for Petitioner.

Ronald E. Lefevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Steven M. Crass, AUSA, Office of the U.S. Attorney, Fresno, CA, for Respondent.

Before: D.W. NELSON and REINHARDT, Circuit Judges, and OBERDORFER *, Senior Judge.

MEMORANDUM **

Sukhjinder Singh, a citizen of India, petitions for review of the order of the Board of Immigration Appeal ("BIA") adopting and affirming the Immigration Judge's ("IJ") decision denying his applications for withholding of removal and protection under the Convention Against Torture ("Torture Convention") as incredible and fabricated.[1] We deny Singh's petition.

In support of his applications, Singh testified that police inspectors detained him three times—for three days starting February 15, 2000, seven days starting January 26, 2001, and three days starting December 24, 2001—in retaliation for his support of a pro-Sikh opposition party,

---

* The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The IJ also denied Singh's application for asylum on the ground that he did not establish that he applied within one year of his arrival in the United States. He does not contest this finding in his petition to this court.

and that during these detentions the inspectors bound him, beat him, deprived him of food and water, and burned him with acid. According to Singh, he went into hiding after his third detention while he arranged travel to the United States. Singh left India on April 4, 2002 and, after traveling through Jordan, Greece, and France, took a crew berth on a ship sailing from Haiti to the United States. On May 9 or 10, 2002, Singh and three other Indian crewmen deserted from the ship and entered the United States.

On May 20, 2003, Singh filed his application for asylum and withholding of removal based on religion, political opinion, and membership in a particular social group and for protection under the Torture Convention. On January 26, 2005, Singh testified at his removal hearing that he never left India before April 4, 2002. The IJ based his adverse credibility determination on, among other grounds, the fact that information contained in Singh's passport and seafarer's identification book contradicted his testimony.

Where, as here, "the BIA adopts the findings and reasoning of the IJ, this court reviews the decision of the IJ as if it were that of the BIA." *Farah v. Ashcroft,* 348 F.3d 1153, 1156 (9th Cir.2003). The standard of review is extremely deferential because "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id. (quoting* 8 U.S.C. § 1252(b)(4)(B)). This standard applies to IJ credibility findings. Therefore, we must deny Singh's petition unless no reasonable finder of fact could hold that he was not credible. *Id.* The IJ "must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief," and that reason "must be substantial and bear a legitimate nexus to the finding." *Salaam v. I.N.S.,* 229 F.3d 1234,

1238 (9th Cir.2000) (internal quotations omitted).

The IJ concluded that "it is a fact that the respondent [Singh] definitely did not leave India for the first time in his life in April 2002. It is evident that the respondent was outside of India, perhaps on several occasions, perhaps for lengthy periods of time, before April 2002." The IJ cited the following facts in support of this conclusion: (1) the Embassy of India in Athens, Greece issued Singh's passport on November 11, 2001 as a replacement for a passport originally issued February 4, 1997; (2) the passport contains stamps indicating travel before April 4, 2002, including two mostly illegible stamps dated January 10, 2002; and (3) Singh's seafarer's identification was issued in 2000. The IJ rejected Singh's testimony that an agent acquired his passport and seafarer's identification for him just before his departure from India and that he had no knowledge concerning the dates of issue or the various stamps on the passport. The IJ found that Singh's "travels in this respect certainly call into question each and every one of the arrests and detentions that he states he suffered in India in the years 2000, 2001, and 2002."

The passport and seafarer's identification are substantial documentary evidence that Singh traveled outside India before April 4, 2002. Moreover, at least one of the dates of travel indicated by the passport stamps (January 2002) occurred during the time Singh testified that he had been in hiding in India, a few weeks after the third arrest and detention, calling into question the heart of his claim. We have considered Singh's contention that the IJ lacked substantial evidence to reject his testimony that (1) Singh had nothing to do with obtaining the travel documents and (2) the first time he saw them was just before he left India. However, given the

documentary evidence, a reasonable finder of fact could conclude that he left India before April 4, 2002.

The IJ cited three other grounds for his adverse credibility determination: (1) Singh displayed little knowledge of the goals of the pro-Sikh opposition party and did not describe its political agenda, including the party's goal of establishing an independent Sikh state called "Khalistan"; (2) Singh's testimony concerning the identity of the police inspector responsible for the third arrest and detention was inconsistent with a correction made to Singh's application at the start of the hearing; and (3) Singh testified at the hearing that the agency that arrested and detained him three times was called the "CI," which is inconsistent with his application and with the background materials that indicate that this Indian law enforcement agency is known as the "CIA." We do not address these grounds here, because, "[s]o long as one of the identified grounds is supported by substantial evidence and goes to the heart of [Singh's] claim of persecution, we are bound to accept the IJ's adverse credibility finding." *Wang v. I.N.S.*, 352 F.3d 1250, 1259 (9th Cir.2003).

**PETITION DISMISSED.**

REINHARDT, Circuit Judge, dissenting.

Because, in my opinion, none of the four grounds upon which the IJ relied in making his adverse credibility determination meets even our deferential standard of review for substantial evidence, I dissent. First and foremost, the ground relied upon by the majority cannot be sustained. The IJ did not explain his rejection of Singh's entirely plausible testimony that an agent acquired his travel documents and that he therefore had no knowledge of their contents. *See Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998) (holding adverse credibility determination unsupported by substantial evidence where the "BIA did not comment on [alien's] explanation, nor suggest any reason that it found his explanation not credible"). Moreover, the IJ impermissibly speculated that a fake passport would not contain stamps from prior travels. *See, e.g., Ge v. Ashcroft*, 367 F.3d 1121, 1125–26 (9th Cir.2004) (reversing adverse credibility determination where IJ's findings were "based on impermissible speculation").

Second, the three grounds that the majority declines to address are equally insufficient to support the IJ's determination. One, Singh testified to the goals of the pro-Sikh opposition party including fair crop prices and water distribution, and was never asked about the party's views on Khalistan at the hearing. Two, as the Government concedes, Singh testified consistently about the police inspector responsible for his third arrest. Three, the distinction between "CI" and "CIA" is the type of trivial error that we have consistently found to be an insufficient basis for an adverse credibility determination. *See Jibril v. Gonzales*, 423 F.3d 1129, 1133 (9th Cir.2005) (explaining that "[t]rivial errors by an asylum applicant do not constitute a valid ground upon which to base a finding that an asylum applicant is not credible") (internal citation and quotation marks omitted).

I would grant the petition for review.